Murder; life. *Page 137 
On May 14, 1980, Detective Willie Estes of the Mobile County Sheriff's Department was called to investigate a pickup truck located on a dirt road about thirty yards off Hamilton Boulevard in south Mobile County. There Estes discovered the body of Houston Busby, with a hole in the top of his head, lying across the front seat of the vehicle. Estes stated that, considering the position of the body, blood and tissue, it was his opinion that Busby had been killed outside the truck and later placed inside the vehicle.
On cross-examination by defense counsel, Detective Estes testified, without objection, that his investigation of the facts surrounding the Busby murder revealed that there was a history of "family violence," and that Houston Busby "had been beating his wife and children for many years."
Dennis Cross, who entered a plea of guilty to conspiracy to commit the murder of Houston Busby, was living in the Busby household at the time of the killing. He had been working for Busby and had been dating one of the victim's daughters. He stated that, on two occasions before the murder, the appellant approached him about killing Houston Busby and said that Cross could make $5,000. Cross refused. Cross also said that Marie Busby, the wife of the victim, asked the appellant and Cross if they knew of "anybody that would kill somebody for her;" she stated that she would pay $10,000 for the job. Cross told Mrs. Busby "no" both times she brought up the subject.
The afternoon before the murder Cross heard appellant ask Kenneth Ladner, Marie Busby's son and the victim's stepson, if he could borrow a rifle. On the day of the murder Cross and the appellant rode to the Busby residence together. Appellant stated that he "was gonna hide in the back of Marie's pickup and shoot him [Houston Busby] when he come up in the yard." When they reached the house appellant said, "he's already here, I can't do it that way, I'm gonna have to find another way."
According to Cross, after dinner that night, appellant asked Houston Busby if he would like to see appellant's new gun. Appellant showed Busby a rifle that looked like the one belonging to Kenneth Ladner. After Houston retired for the evening, appellant took the rifle, went to Houston's bedroom door, aimed, and shot. Cross testified that appellant attempted to shoot Busby again, but he [Cross] prevented the second shot.
Cross and the appellant then put Busby's body in a pickup truck and drove it out to Hamilton Boulevard. Marie, the victim's wife, and Tonya, the victim's daughter, along with Cross and the appellant, cleaned up the bedroom and put the bed linens in a plastic bag. Kenneth Ladner then took the rifle and the plastic bag across the Mississippi State line and threw them off a bridge.
Tonya Busby, the victim's fifteen-year-old stepdaughter, testified that she had been dating appellant for over two years and had been engaged to marry him. She denied that she and the appellant had ever communicated about having her father killed. Miss Busby admitted that after her father's killing and her mother's trial for that offense, she lived in the same house with appellant for about two months. At the time of the trial she was still "seeing" the appellant, but she was unsure whether they were still engaged.
Over appellant's objection, the trial judge granted the State's motion to declare Miss Busby a witness of the court. Also over appellant's objection, the court admitted into evidence several letters written prior to Houston Busby's death from Tonya Busby to the appellant. The following excerpts from the letters were read to the Jury:
 "After my dad is gone my mom will be a lot happier and so will I.
. . . .
"I hate that bastard. I want that done this week.
. . . .
 "You f______ right I'm going to have your baby and only your baby."
The prosecution questioned Miss Busby about the meaning of having "that done" in *Page 138 
an attempt to show that Miss Busby plotted with the appellant to have her father killed. The witness denied a plot and stated that she did not recall what she had meant by the phrase.
After the testimony of Dr. Leroy Riddick, Department of Forensic Sciences, who stated that in his opinion the victim's death was caused by a gunshot wound to the head, the State rested. The appellant moved to exclude the evidence arguing that there was no evidence to corroborate the testimony of Dennis Cross, a claimed accomplice. The court overruled the motion and the defense rested without presenting any evidence. The trial judge charged the jury that they must decide, as a question of fact, whether Dennis Cross was an accomplice. The court instructed them that if they determined that Cross was an accomplice, then in order to convict the defendant they must determine that there was evidence presented to corroborate Cross' testimony.
 I
Initially appellant contends that the trial judge erred by granting the State's motion to declare Tonya Busby the court's own witness, thereby allowing the State to ask leading questions and attempt to impeach her.
Section 12-21-138, Code of Alabama 1975, provides the following:
 "Leading questions are generally allowed in cross examinations and only in these, but the court may exercise a discretion in granting the right to the party calling the witness and in refusing it to the opposite party when, from the conduct of the witness or other reason, justice requires it."
In view of the fact that Tonya Busby was the appellant's fiance and, according to the testimony of Dennis Cross, she herself had a role in concealing the evidence of her father's killing, it is our judgment that the trial court did not abuse its discretion by allowing the State to question her as on cross-examination. See Anderton v. State, Ala.Cr.App.,390 So.2d 1083 (1979), cert. denied, Ala., 390 So.2d 1087 (1980);Helton v. State, 55 Ala. App. 428, 316 So.2d 355 (1975).
 II
Appellant next asserts that his motion to exclude for lack of evidence corroborating the testimony of Dennis Cross, whom he claims was an accomplice, was due to be granted.
The threshold question is whether, in fact, Cross was an accomplice. The classic test to determine whether a witness is an accomplice is whether he could be indicted and convicted for the same offense for which the accused is then being tried.Jacks v. State, Ala.Cr.App., 364 So.2d 397, cert. denied, Ala.,364 So.2d 406 (1978); Strange v. State, 43 Ala. App. 599,197 So.2d 437 (1966).
We do not consider that Cross' guilty plea is determinative of the issue here. Cross confessed his guilt and was adjudged guilty of the offense of conspiracy to commit murder, whereas appellant was tried for the offense of murder. Compare Kimmonsv. State, Ala.Cr.App., 343 So.2d 542 (1977) (accomplices entered pleas of guilty to the same crimes for which defendant was convicted). The question is: could Cross have been indicted and convicted for the offense of murder?
It is clear that Cross' mere presence at the scene of the homicide, without more, is insufficient to show his complicity.Jacks v. State, supra. Cross testified that he did not plan, intend or participate in the actual killing. However, he stated that on the day of the murder he was aware that appellant had borrowed a gun, and during a ride to the Busby home he heard appellant discuss how the victim would be killed. Cross also participated in the cleanup and disposal of evidence after the murder. From these conflicting facts, the question whether Cross was an accomplice was for the jury. The following observation by the court in Jacks v. State, supra is fitting here:
 "[A]lthough it was difficult to reconcile the witness's statement that he and the defendant were driving around trying to *Page 139 
find someone to rob and his other testimony to the effect that immediately on observing the actions of the others (i.e., picking up a stick and a pipe and stating that they were `going to get them') he left the scene, the witness was not an accomplice absent any showing that he said or did anything in the way of encouragement or assistance."
Jacks v. State, supra at 403.
Similarly, in the present case there was no showing that Cross encouraged or aided appellant in the murder of Houston Busby. When a witness denies his participation in the crime charged against the defendant, despite inferences to the contrary, the question is one of disputed fact presenting a jury question. Yarber v. State, Ala., 375 So.2d 1229 (1978).
Though Cross helped conceal evidence after the crime, and would, under former law, have been deemed (if not an accomplice) at least an accessory after the fact, see Ala. Code § 13-9-2 (1975), corroboration is not required for the testimony of an accessory after the fact. Jacks v. State, supra; Cooper v. State, 43 Ala. App. 385, 191 So.2d 224, cert. denied, 280 Ala. 711, 191 So.2d 229 (1966); Belser v. State,16 Ala. App. 504, 79 So. 265 (1918). The cases holding that corroboration of the testimony of an accessory after the fact is not necessary are based upon the following reasoning:
 "The test of complicity is: Could the witness be indicted for the offense either as principal or accessory? If not, he is competent. An accessory after the fact is a separate and distinct offense, made so by Section 6220 of the Code of 1907." [Citations omitted] Belser v. State, 16 Ala. App. at 505, 79 So. 265.
Section 6220 of the 1907 Alabama Code was the predecessor of § 13-9-2 of the 1975 Alabama Code; both sections made accessories after the fact separately indictable from principals and accessories before the fact. Section 13-9-2, however, was repealed by Acts of Alabama No. 77-607, § 9901 (May 16, 1977), and replaced with § 13A-10-2 of the 1975 Alabama Code (Supp. 1978) (obstructing governmental operations) and §§ 13A-10-42 through 44 of the 1975 Alabama Code (Supp. 1981) (Hindering prosecution or apprehension).
 "Under the present law the conduct described under § 13A-10-42 and prohibited by §§ 13A-10-43 and 13A-10-44 would ordinarily make one an `accessory after the fact.' § 13-9-1 and 13-9-2. . . .
 "These sections, as most modern codes, break away from the common-law notion that a person who helps an offender somehow becomes an `accessory' or `accomplice' in the original crime. Instead of proceeding on an `accomplice' theory, the drafters have employed the theory of obstructing justice."
We therefore hold that, because the new code sections, like the former § 13-9-2, define after-the-offense actions such as those undertaken by Dennis Cross in terms of separate crimes, Cross could still be deemed, under one view of the evidence, an accessory whose testimony did not require corroboration. There was no error in the trial judge's overruling appellant's motion to exclude because of a lack of corroboration.
 III
Finally, appellant contends that the trial court erred by admitting letters written to the appellant by Tonya Busby.
As a general rule, a letter written to the accused and found in his possession is admissible if there are facts tending to connect him with the letter. Cox v. State, Ala.Cr.App.,367 So.2d 535 (1978), cert. denied, Ala. 367 So.2d 542 (1979). In the instant case, there is nothing in the record to show that the letters were found in appellant's possession, and there is only Miss Busby's assertion that either she or appellant's sister delivered the letters to indicate appellant's receipt of the writings. Under ordinary circumstances, then, the letters would have been inadmissible hearsay if offered against appellant. See Cox v. State, supra; Gamble, McElroy's AlabamaEvidence, § 193.06 (3d ed. 1977). *Page 140 
If, however, there is evidence that the writer and the intended recipient of the letters were co-conspirators, then the writings may be admitted as the statements of one co-conspirator attributable to the other partner in crime. See Gamble, supra at § 195.03. Where proof of a conspiracy exists, any act or statement by an accused's co-conspirator in the commission of the crime, done or made before the commission of the crime, during the existence of the conspiracy and in furtherance of a plan or design, is admissible against the accused. Conley v. State, Ala.Cr.App., 354 So.2d 1172 (1977);Svirbely v. State, 53 Ala. App. 452, 301 So.2d 219 (1974). See also Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213
(1970).
It is well-settled that a conspiracy need not be proved by direct and positive evidence, but may be determined from the conduct and relationship of the parties, from relevant testimony, from the circumstances surrounding the act, and from the conduct of the accused and his confederates subsequent to the act. Williams v. State, Ala.Cr.App., 375 So.2d 1257, cert. denied, Ala., 375 So.2d 1271 (1979). Before the statements of one co-conspirator may be admitted against another co-conspirator, only prima facie evidence of the existence of the conspiracy is necessary. Cox v. State, 240 Ala. 368,199 So. 806 (1941).
In the present case, we believe that the cumulative effect of the following testimony provided prima facie evidence that Tonya Busby and the appellant conspired to cause the death of Houston Busby and authorized the admission of the letters:
 1. The victim, Houston Busby, had been beating his wife and children for years.
 2. The victim's wife, Tonya Busby's mother, attempted to set up a murder-for-hire of her husband.
 3. Tonya Busby was engaged to the appellant at the time he allegedly shot her father.
 4. Miss Busby helped to clean up and dispose of evidence after the shooting.
 5. Miss Busby and the appellant lived under the same roof after the killing and continued to see each other up to the time of appellant's trial.
We have carefully searched the record for error and have found none; therefore the judgment of conviction by the Mobile Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.