Billy R. Hutcherson in a two count indictment was indicted for assault in the first degree and sodomy in the first degree. The jury found Hutcherson guilty of assault in the second degree and sexual abuse in the first degree. He received consecutive sentences of 10 years for the assault and five years for the sexual abuse.
At the end of the state's case, the motion to exclude was denied. The motion for new trial raised the issue of the sufficiency of the evidence on the grounds that the testimony of the accomplice was uncorroborated and the testimony of the victim was contrary to the allegations of the indictment.
The prosecutrix, a sixteen-year-old female, who was not married to appellant Hutcherson, was in the company of Hutcherson and John Mauk from 4:30 p.m. of January 22, 1982, until the early hours of January 23, 1982, in Huntsville. Around 12:30 a.m. they left the Sunshine Club in a car driven by Mauk. The victim and Mauk argued about her failure to provide a date for him. She stated that en route from the Sunshine Club she was cursed by Mauk, choked by Hutcherson, and forcibly returned to the car after she had gotten out and had begun to run away from them. Her testimony was that Mauk drove the car to a lonely dirt road near Gate 5 of Redstone Arsenal. Hutcherson told her to undress, get on her knees and perform oral sex. Upon completion of the oral sex she was thrown against the car and some object which she could not identify was inserted into her anus. She could not identify the *Page 1050 
person who assaulted her. She then found herself lying on her back on the ground with Hutcherson choking her with his hands. The next thing she remembers is waking up on the ground in the rain, cold, bleeding and with a finger nearly cut off. She crawled to a nearby house, knocked on the door and an ambulance was summoned for her. She sustained a skull fracture, cuts about the head and body and a disfigured finger. She does not know who may have inflicted her serious injuries.
John Mauk was a codefendant who testified on behalf of the prosecution and who related the events leading to the injuries of the prosecutrix. He stated that when the car was stopped on the dirt road, Hutcherson directed the girl to remove her clothes and the two engaged in oral sex. The witness then found some beer or whiskey on the rear seat of the car and had a drink. Next he saw the victim leaning against the car with her head on the hood with Hutcherson's hands on her head and neck while an act of anal intercourse was in progress. He walked away from the car and had a drink. When he returned he discovered the girl lying on her back on the ground with Hutcherson choking her. Hutcherson began to strike her with a rock and he pulled him off. Headlights appeared nearby and he and Hutcherson fled into a swamp. They later returned to the car and drove away, leaving the injured girl.
Billy Hutcherson testified in his own defense. He had known the prosecutrix for two weeks and they had engaged in previous acts of oral sex. When the car was stopped by Mauk, he and the victim relieved themselves near the car. While each was exposed he requested the girl to perform oral sex upon him. He claimed she performed the act without any force or threat. Hutcherson denied throwing her against the car or having anal intercourse with her. He claims that Mauk began cursing the girl again for the lack of a date and demanded she strip off her clothes; as she was removing them, she was hit by Mauk which caused her to fall across the hood of the car. At this time she swung and hit Hutcherson on his recently injured jaw. He lost his temper and threw her to the ground choking her for about forty-five seconds when he regained control of himself and got up. At this time Mauk began to kick her in the head and said he was going to kill her. Mauk then began to strike her with a rock until the headlights appeared down the road. They went into the swamp and later drove away leaving the victim on the ground with mud and blood over the upper part of her body.
 I
Hutcherson asserts that the motion to exclude and the motion for new trial should have been granted for lack of evidence corroborating the testimony of Mauk. Mauk was indicted for the same offense. Mauk's presence at the scene is of itself insufficient to show complicity. Mauk denied participation. His case was later nol-prossed. The facts were conflicting. The question was one for the jury. Lewis v. State, 414 So.2d 135
(Ala.Cr.App. 1982).
If Mauk was an accomplice, his testimony required corroboration. Ala. Code § 12-21-222 (1975). In our judgment Mauk's testimony was corroborated by the testimony of the prosecutrix and the testimony of Hutcherson himself when he admitted choking her for at least forty-five seconds after throwing her to the ground. The testimony of the girl and Hutcherson certainly tends to connect Hutcherson with the assault crime and tends to incriminate him. Peoples v. State,418 So.2d 935 (Ala.Cr.App. 1982); Edwards v. State,418 So.2d 232 (Ala.Cr.App. 1982).
There was no error in the trial court's overruling of Hutcherson's motion to exclude or motion for new trial for lack of evidence corroborating the testimony of Mauk.
 II
Hutcherson next argues that the court erred to reversal in submitting to the jury the lesser offenses of assault in the second degree and assault in the third degree. *Page 1051 
At the conclusion of the initial oral charge of the court wherein the court properly and clearly defined the assault offenses of first degree, second degree and third degree, we find on page 191 of the record the following:
 "THE COURT: Does the defendant have any exceptions to the charge?
 "MR. PRICE: I've got a couple for the record. I object to the Court's giving the charge of sodomy in the first degree on the grounds that the evidence did not support said charge, and that any sexual intercourse, if any did exist, was not the result of forcible compulsion. I object to the Court's giving the charge as a lesser included offense of sexual abuse because it is not a lesser included offense, because the elements of sexual abuse are not necessarily included in the elements of sodomy in the first degree.
 "And I would object to the Court's giving the charge on the combination of Section 13A-6-20 (a)(1) and 13A-6-20 (a)(2) because the defendant is only charged under 13A-6-20 (a)(2), and the jury would have to find the defendant had the specific intent to disfigure to find him guilty of assault in the first degree.
 "THE COURT: Mr. Gardner, any exceptions to the charge?
"MR. GARDNER: No exceptions to the charge.
"THE COURT: All right, thank you."
The jury returned to the courtroom and requested further instructions on the degrees of an assault. The trial court again defined the three degrees of an assault and on page 199 of the record we have the following:
 "THE COURT: Any questions or exceptions by the defendant?
"MR. PRICE: None by the defendant.
"MR. GARDNER: None for the State."
There was no exception to the oral charge by the court submitting to the jury the issue of lesser degrees of an assault in the first degree. There were no requested instructions by Hutcherson. Failure to object or except constituted a waiver of any defect in the charge.
There was a reasonable theory under the conflicting evidence to support a lesser assault offense. The trial court committed no error in charging the jury on assault in the second degree.Myers v. State, 401 So.2d 288 (Ala.Cr.App. 1981). There was evidence which if believed by the jury beyond a reasonable doubt would support a verdict of assault in the second degree. Within the meanings of the assault statutes, a skull fracture is a "serious physical injury"; choking someone for at least forty-five seconds to the point where the victim does not remember anything certainly constitutes a "physical injury." There is no merit in the contention of Hutcherson that the elements of assault in the second degree were eliminated by the jury verdict finding him not guilty of assault in the first degree.
Hutcherson did not argue in brief that the trial court erred in charging the jury concerning § 13A-6-20 (a)(1), Code of Alabama 1975, and § 13A-6-20 (a)(2), when the indictment charged an assault under § 13A-6-20 (a)(2). There would be no basis for assignment of error, for the defendant could not complain of instructions relative to one offense where the verdict of the jury is for a lesser offense. 7 Ala. Digest,Criminal Law, Key No. 1172.8.
 III
Hutcherson insists the trial court committed error to reversal in charging the jury that sexual abuse in the first degree was a lesser included offense of sodomy in the first degree.
Sodomy requires deviate sexual intercourse. Sexual abuse requires sexual contact which is defined in § 13A-6-60 (3), Code of Alabama 1975, as:
 "(3) SEXUAL CONTACT. Any touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party."
The court in Parker v. State, 406 So.2d 1036 (Ala.Cr.App. 1981), indicated that the *Page 1052 
phrase "or other intimate parts" is used to expand the protection of the statute and to avoid narrow judicial construction of the sexual abuse statutes. It was stated therein:
 "In our judgment, the determination of which areas are intimate is properly a question of law to be resolved by the trial court. Common use of the English language would indicate that the term `intimate parts,' in the context of the statute, refers to any part of the body which a reasonable person would consider private with respect to touching by another."
The Commentary following § 13A-6-66 provides in part as follows:
 "Section 13A-6-66 provides felony penalties for `sexual contact' under circumstances generally corresponding to that required for first degree rape, Section 13A-6-61, and first degree sodomy Section 13A-6-63."
There was evidence before the jury of an act of oral sex and anal intercourse between the prosecutrix and Hutcherson. Under the conflicting evidence before the jury, the prosecution was entitled to have the jury instructed on sexual abuse in the first degree as a lesser offense of sodomy in the first degree.
 IV
The issue of consent, force and intent to gratify the sexual desire of either was for the jury under the evidence. In determining whether the State presented a prima facie case, the evidence is considered in its light most favorable to the state. Wilson v. State, 428 So.2d 197 (Ala.Cr.App. 1983). Under the circumstances of this case, the evidence, if believed by the jury, is sufficient beyond a reasonable doubt to support a conviction of sexual abuse in the first degree.
The motion of Hutcherson to exclude the evidence for the failure to make out a prima facie case was properly denied. The motion of Hutcherson for a new trial on the ground of insufficient evidence was properly denied.
Hutcherson received a fair trial. He has been represented throughout by competent, skilled and experienced counsel serving by appointment. The judgment and conviction by the Madison Circuit Court should be affirmed.
The foregoing opinion was prepared by Hon. RILEY P. GREEN, Circuit Judge, temporarily on duty on the court pursuant to §12-2-30 (b)(6), Code of Alabama 1975; the court has adopted his opinion as its own.
AFFIRMED.
All the Judges concur.