James Bernard Fletcher was indicted for the intentional killing of one Kevin West, "by stabbing him with a knife," in violation of § 13A-6-2, Code of Alabama 1975. The jury found the appellant "guilty of murder as charged," and following a sentencing hearing, the trial judge sentenced him to "twenty years and one day" in the penitentiary.
Sherry White testified that in November, 1983, she was present when the appellant and the deceased, Kevin West, had a fight. She indicated that on the night in question, she and Kathy Ricks walked over to visit Kevin at his home. When she and Kathy arrived at Kevin's residence, the appellant, Kevin, and Marcus Steele were driving up in Kevin's automobile. Kevin invited the girls into the house. Once inside the house, Kevin mixed everyone a drink, and the boys began to smoke marijuana. Sherry stated that Kevin asked her if she and Kathy wanted to go to a movie with him. Sherry and Kathy left the house, and walked to Sherry's house where she changed clothes. When they returned to Kevin's house, Sherry entered into a conversation with the appellant, and he asked if she and Kathy would go to a party with him and Marcus. When she told appellant that she did not know, the appellant told her that Kevin had earlier referred to her as a whore. She said that Kevin had gone outside to start his car at this time, so she went out and confronted him with this information. Kevin denied making the statement and called the appellant outside.
Miss White stated that when the appellant came outside, Kevin told him to leave and do not come over any more "if he was going to be lying like that." (R. 20) The appellant and Kevin exchanged words about this matter, and entered into a shoving match. This confrontation ended in the street. Kevin walked away from the appellant and went into his house, shortly returning outside. Kevin asked Sherry if he could give her a ride home. At this point, the appellant stated that, if she got in the *Page 342 
car with Kevin, they were both going to be dead. Sherry stated that she and Kevin were standing beside the curb, and the appellant was in the street behind Kevin. The appellant came up behind Kevin, reached in Kevin's back pocket, and pulled out a knife. Kevin told the appellant to give the knife back to him, but the appellant said, "you were going to use this on me." Kevin denied this, and asked the appellant to give the knife back to him, over and over again. The appellant began waving the knife at Kevin, then grabbed him by the shirt. Sherry then left and went home, returning later to talk to police.
Kathy Ricks' testimony was much the same as Sherry White's. She testified to the same events leading up to the initial confrontation between the appellant and Kevin. However, she stated that after Kevin had told appellant to leave, the appellant took his coat off and said, "we can fight," and they began shoving each other. (R. 53) Kathy further stated that the first confrontation ended in the street, and Kevin then walked into his house, returning shortly thereafter. She stated that appellant and Kevin began fighting. She tried to get Marcus Steele to break them up, and when she turned back around, the appellant had a knife in his hand. The appellant was waving the knife back and forth. She stated that she again asked Marcus to break them up, and when she turned around, Kevin was on the ground with the appellant on top of him. Appellant then stabbed Kevin, and stated, "you dead, man, you dead." (R. 59) Kathy stated that the appellant then got up, walked down the street, and tossed the knife aside.
Marcus Steele testified that he and the appellant had gone to visit Kevin West on the night in question. They entered Kevin's house and drank some beer. The three of them then left and went to buy some liquor. When they returned to Kevin's house, Sherry White and Kathy Ricks walked up, and everyone went inside. Everyone was inside drinking mixed drinks. He stated that Kevin and the appellant got into an argument because appellant said that Kevin had to go pick up a whore. He stated that at this time everyone was outside the house. He said that the appellant and Kevin were in the street fighting. When they stopped, Kevin walked into the house and came back out a short time later. Kevin walked down to the street and was talking to Sherry when the appellant came up behind Kevin and started hitting him. The appellant then held up a knife and said, "look what he tried to stab me with." (R. 79) Marcus indicated that the appellant began hitting Kevin with the knife. He stated that the appellant struck Kevin with the knife in the upper body. They stopped fighting when Kevin fell to the ground. He said that the appellant walked off and threw the knife on the ground. Marcus stayed at the scene until the police arrived, then told them what happened.
Dr. Josephino Aguilar testified that he performed an autopsy on the body of Kevin West. He stated that there were seven stab wounds on the upper torso and extremities. It was his opinion that the cause of death was a stab wound through the left breast, which cut the heart, severed the coronary artery, and punctured the left lung.
There was testimony at trial that the knife was found by police officers across the street in front of Kevin West's residence.
Alice Marie Booker, the appellant's mother, testified that she was home on the evening in question, and that appellant came to the house around 9:20 p.m. She stated that the appellant entered the house, and he had blood all over him. She told him to go take a bath, and he then told her he had been in a fight. She told the appellant to go to bed, which he did. She further stated that she put his clothing in the washing machine.
The appellant testified in his own behalf, and his testimony was substantially the same as the other witnesses, up until the point of the fatal fight. Referring to this second altercation, the appellant said that he was in the street when Kevin came out of the house and walked to the curb to talk *Page 343 
to Sherry White. He stated that he walked up the street diagonally toward the spot where Kevin and Sherry were talking. He said as he walked in that direction, Kevin walked toward him in the street. He stated that he thought Kevin had a gun, so he did not run. He stated that as Kevin neared him, he grabbed Kevin's shirt to hold him off, and when he did so, Kevin grabbed his shirt. There was a brief tussle, during which appellant saw the knife in Kevin's back pocket. Appellant then grabbed the knife out of Kevin's pocket, at which time he and Kevin released each other. Appellant stated that Kevin kept reaching toward him as appellant waved the knife in front of him. He stated that Kevin finally grabbed him by the throat, rammed his other hand into appellant's mouth, and forced appellant down on his knees. Appellant said that he was gasping for air, and since he could not breathe, he lashed out at Kevin with the knife, and kept stabbing until Kevin collapsed. Appellant then got up and walked down the street, tossing the knife aside as he walked away.
 I
The appellant contends that the trial court erred in overruling his motion for new trial. He specifically argues that the evidence was insufficient to support the jury's verdict of guilty of murder.
"When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for acquittal, the refusal to give the affirmative charge, or the denial of a motion for new trial by the trial court do not constitute error." Young v.State, 283 Ala. 676, 220 So.2d 843 (1969); Baker v. State,338 So.2d 528 (Ala.Crim.App. 1976); Cox v. State, 363 So.2d 1054
(Ala.Crim.App. 1978); Duncan v. State, 436 So.2d 883
(Ala.Crim.App. 1983). Conflicting evidence as to what actually took place creates a question for the jury to resolve. Grahamv. State, 339 So.2d 110 (Ala.Crim.App.), cert. denied,339 So.2d 114 (Ala. 1976); McBryar v. State, 368 So.2d 568
(Ala.Crim.App.), cert. denied, 368 So.2d 575 (Ala. 1979).
Further, "[a] verdict of conviction will not be set aside on the ground of insufficiency of the evidence, unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this [c]ourt that it was wrong and unjust." Ward v. State, 356 So.2d 238 (Ala.Crim.App.), cert.denied, 356 So.2d 242 (Ala. 1978); Johnson v. State,378 So.2d 1164 (Ala.Crim.App.), cert. quashed, 378 So.2d 1173 (Ala. 1979); Duncan v. State, supra.
In the case at bar, the jury heard all the evidence and they were charged on lesser included offenses. They chose not to believe the appellant's version of the incident, i.e. that he acted in the heat of passion. We have carefully reviewed the evidence in this cause and find that there was sufficient evidence to support the verdict of murder. See Baker v. State, supra; Graham v. State, supra; Ward v. State, supra; Hamiltonv. State, 358 So.2d 766 (Ala.Crim.App. 1977), writ quashed,358 So.2d 772 (Ala. 1978); Cox v. State, supra.
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.