TYSON, Judge.
John Andrews was indicted for theft in the first degree in violation of Ala.Code 1975, § 13A-8-3. He was found “guilty as charged in the indictment” and was sentenced to ten years in prison, one year to be served and the remainder suspended pending Andrews’s good behavior during a five-year probation period. The appellant contends that the trial court erred in denying his motion for judgment of acquittal because the evidence, he says, is insufficient to sustain the conviction.
The appellant was convicted of the theft of money from the Birmingham Entertainers Charity Fund, Inc. (hereinafter referred to as BECF). The purpose of the organization was to help people in the entertainment industry who needed financial help. The organization raised money by staging benefits. The appellant was the chairman of the Medical Benefits Committee in 1986. The purpose of the committee was to determine whether someone who requested assistance had a legitimate medical need.
In the summer of 1986, it was brought to the organization’s attention that an entertainer named Freada Wallace was critically ill with diabetes and needed a specialized wheelchair. Charles Giambrone, who was the chairman of BECF at the time, testified that the appellant volunteered to research Freada Wallace’s case. The appellant submitted a letter to Giambrone on September 8, 1986, recommending that the organization underwrite the cost of the wheelchair. Jo Anne Poindexter, a member of BECF at that time, testified that the organization agreed to put on benefits in Wallace’s behalf, and the appellant was responsible for purchasing the wheelchair.
The wheelchair was delivered to Wallace after the appellant notified Ambulatory Services of America that the organization would pay for the wheelchair and before any benefits were held. Laurie Lynn Moore of Ambulatory Services of America testified that the appellant contracted for the wheelchair on August 29, 1987, and that the wheelchair was delivered the next day. The cost of the wheelchair was $2,455.
Linda Cencula, an employee of America’s First Credit Union, testified that BECF set up an account with the credit union on September 19, 1986. The account was referred to as the “Big Freada” account. *1219 The account was specifically set up for the benefit of Freada Wallace. Cencula testified that four people, including the appellant, were authorized to make withdrawals from the account, but the appellant was the only one who requested withdrawals. The “Big Freada” account was separate from other BECF funds.
A benefit was held on October 5,1986, on Wallace’s behalf. Dwight Anderson, another member of BECF, testified that he and the appellant deposited $2600 in cash into the “Big Freada” account on the day after the benefit. A physician, J. Clayton Davie, donated a $300 check at the benefit. Mail-in contributions totaled $753. After this fundraiser, the appellant told Giam-brone that the wheelchair had been bought and paid for. Two other benefits were held in November 1986, which raised an additional $1252.
Giambrone announced that the wheelchair was paid for at a BECF meeting on February 2, 1987. In August of that year, a friend of Freada Wallace’s informed BECF that the wheelchair had not been paid for and that Wallace had been harassed by the wheelchair company. JoAnne Poindexter testified that she verified this with Freada Wallace.
BECF held a special meeting on September 22, 1987, to determine why the wheelchair had not been paid for. Several BECF members present at that meeting testified that the appellant claimed that the bank had mailed him a check. He claimed that he did not know why it was sent to him. He said he cashed the check and received $3,208. He told BECF that he gave the cash to a girl who worked for him and told her to get a money order. He said he brought money orders for that amount to a BECF meeting at Rascal’s (a nightclub) and laid them down. He claimed that somebody must have walked off with them. BECF paid for the wheelchair on September 22, 1987.
Laurie Lynn Moore testified that Ambulatory Services of America did not receive any payment on the wheelchair in the year preceding the September 22 payment. She testified that her company called the appellant on January 11, 1987, and that he stated that a partial payment would be made that week. The appellant was called again on May 14, 1987, and he stated that BECF was waiting for an IRS tax exempt number. On September 21, 1987, the appellant contacted the company and asked for a note or agreement that would allow him to pay for the wheelchair in payments. JoAnne Poindexter contacted the company about the wheelchair the next day.
Linda Cencula testified that the total amount in the “Big Freada” fund was $3,353. The appellant withdrew $145 on October 16, 1986, and $3,208 on December 3, 1986. He told her that the first withdrawal was for printing expenses for a benefit and that the second withdrawal was to pay for the wheelchair. The second withdrawal closed out the account.
Richard Reese, a vice-president in deposit operations for Central Bank, testified that on October 17, 1986, a check payable to the appellant and drawn on the credit union account was deposited in the account of the appellant’s mother. The appellant received $100 in cash. His name was on the deposit slip. A check drawn on the credit union account for $3,208 payable to “Big Freada, BECF” was deposited in his mother’s account on December 3, 1986, through an automatic teller machine. In addition, a check for $300 issued by J. Clayton Davie, M.D., and payable to the Freada Wallace Fund was also deposited in the appellant’s mother’s account through an automatic teller machine. Reese testified that beginning on October 16, 1986, most of the money in the account was withdrawn through frequent withdrawals from automatic teller machines. On December 19, 1986, a cashier’s check for $1,000 payable to Freada Wallace was paid for from the appellant’s mother’s account. There was testimony that the appellant’s mother was an invalid who could not get around very much.
The defendant testified that the Big Freada fund was opened for the benefit of Freada Wallace. He stated that he withdrew $145 from the account in October 1986 to cover expenses he incurred on behalf of BECF. He testified that the second *1220 check was mailed to Charles Giambrone and that Giambrone gave the appellant the check and told him to take care of things. He said he deposited the money in his mother’s account. He testified that he put all of his money in his mother’s account. He testified that he could withdraw money only when his mother would sign a check, or through a money card. The appellant testified that he put the money from the Big Freada account into his mother’s account because there was a lot of confusion as to how the wheelchair would be paid for. He said he made several withdrawals from his mother’s account with the money card. The withdrawals totaled $2,250. He said he withdrew the money because his mother was in Texas, and he said he put the money in a cash box at his house. He testified that he sent Freada Wallace a $1,000 cashier’s check in December to assist her and her children at Christmas.
The appellant testified that he tried to get in touch with Giambrone in January 1987, he said, to find out about writing the check for the wheelchair. On January 14, 1987, he said he gave the money to a girl who worked for him and told her he needed a money order for $2,250 that was not payable to anyone or signed by anyone. He said that the girl brought him four money orders totaling $2,250. He said he arrived late to the BECF that night and put a file folder with the money orders in it on top of some “Kwik Copy” boxes in which the organization’s secretary carried the minutes.
The appellant contends that the State failed to prove the elements of theft. We disagree.
“A person commits the crime of theft if he knowingly obtains or exerts unauthorized control over the property of another, with the intent to deprive the owner of his property.” Ala.Code 1975 § 13A-8-2(1). Theft of property in excess of $1,000 constitutes theft in the first degree. Ala.Code 1975, § 13A-8-3.
“As a threshold consideration, this court is required to view the evidence in a light most favorable to the prosecution. Where the evidence raises a question of fact which, if believed by the jury would be sufficient to sustain the conviction, the denial of a motion for acquittal or new trial will not be considered error.”
Parrish v. State, 494 So.2d 705, 709 (Ala.Crim.App.1985) (citations omitted). See also, LaBarber v. State, 455 So.2d 941 (Ala.Crim.App.1984). The element of intent may be inferred from all of the surrounding facts and circumstances in the case. McCord v. State, 501 So.2d 520 (Ala.Crim.App.1986); McMurphy v. State, 455 So.2d 924 (Ala.Crim.App.1984); Hinds v. State, 423 So.2d 1382 (Ala.Crim.App.1982).
The record clearly indicates that the State established a prima facie case of theft in the first degree. The appellant was an authorized signer on the “Big Frea-da” account. The appellant was the only person to withdraw money from the account. He deposited the money into his mother’s bank account and then made numerous cash withdrawals from automatic teller machines. The appellant told the chairman of BECF that the wheelchair had been paid for, even though it had not been paid for. Only $1,000 of the $3,353 deposited in the “Big Freada” account and subsequently deposited in the appellant’s mother’s account was used for the benefit of Freada Wallace.
The appellant testified that he left the money in the form of money orders at a BECF meeting. Conflicting evidence presents a question for the jury, and a verdict rendered thereon will not be reversed on appeal. Knight v. State, 548 So.2d 647 (Ala.Crim.App.1989). See also, Congo v. State, 477 So.2d 511 (Ala.Crim.App.1985). A conviction will not be set aside on the ground of insufficiency of the evidence unless, “allowing all reasonable presumptions for its correctness, the preponderance of the evidence is so decided as to clearly convince this court that it was wrong and unjust.” Wilbourn v. State, 457 So.2d 1001, 1004 (Ala.Crim.App.1984). See also, Minter v. State, 543 So.2d 202 (Ala.Crim.App.1989); Fletcher v. State, 460 So.2d 341 (Ala.Crim.App.1984). We find that the evidence was sufficient to sustain the appellant’s conviction.
*1221 For the reasons set out above, this case is due to be, and hereby is, affirmed.
AFFIRMED.
All the Judges concur.