Frank Marion Salter, Sr., was indicted for conspiracy to sell cocaine in violation of § 20-2-163, Code of Alabama 1975, and for the sale of cocaine in violation of § 13A-12-211. He was found "guilty as charged in the indictment" and was sentenced to four years in prison, one year to be served and three years to be spent on probation. The appellant raises four issues on appeal. The pertinent facts will be discussed as they arise below.
 I
The appellant first contends that the trial court erred in admitting the hearsay declarations of his alleged co-conspirators because, he argues, the State did not present a prima facie case of conspiracy by independent evidence. The record reveals that the following evidence was presented by the State prior to the admission of any statements by the alleged co-conspirators:
Undercover A.B.C. Agent Darryl Armour went to an area known as Glasgow Hollow on September 7, 1988. He gave a man named Oliver Cook the sum of $1,000. He told Cook that the money was for purchasing an ounce of cocaine. Cook left Armour's presence and when he returned he gave the $1,000 back to Armour. Armour returned to Glasgow Hollow in Jefferson County, Alabama, the next day with the same $1,000. He and Cook then went to a house on Lafayette Street and met Nathaniel Walker. Walker made four or five telephone calls. Armour and Cook left and went to Cook's house. They left Cook's house and went to another house, where they met Stanley Glover. Armour, Cook, and Glover returned to Glasgow Hollow. Armour still had the $1,000.
Glover and Armour left Glasgow Hollow in Armour's car. They went to the Chevron gasoline station on Arkadelphia Road. Glover made several telephone calls from the pay phone at that station. The phone rang once and Glover answered it. He talked for approximately one minute. Armour and Glover then went to a Jack's hamburger restaurant. A black Mercury Marquis automobile with black tinted windows pulled into the restaurant parking lot. Armour gave Glover the $1,000. Glover left and got into the Marquis. After a few minutes, Glover returned to Armour's car and returned the $1,000. The Marquis left and returned to Jack's in approximately ten minutes. Glover got back into the Marquis. He returned to Armour's car with a sandwich bag containing a white powder which Armour purchased as cocaine. Glover did not return the $1,000. As the Marquis left, the driver rolled down the windows and waved at Armour. Armour identified the appellant as the driver. The trial court found that the State had presented a prima facie case of conspiracy and allowed *Page 1094 
hearsay statements of the alleged co-conspirators to be admitted.
"Where proof of a conspiracy exists, any act or statement made by an accused's co-conspirator in the commission of the crime, done or made before the commission of the crime, during the existence of the conspiracy and in furtherance of a plan or design is admissible against the accused." Lewis v.State, 414 So.2d 135, 140 (Ala.Crim.App.), cert.denied, 414 So.2d 140 (Ala. 1982). See also Nance v.State, 424 So.2d 1358 (Ala.Crim.App. 1982). Statements of a co-conspirator may be admitted against another co-conspirator when the State presents prima facie evidence of the existence of a conspiracy. Lewis. It is well settled that a conspiracy need not be proved by direct and positive evidence and may be proved by circumstantial evidence. Lewis;Stinson v. State, 401 So.2d 257 (Ala.Crim.App.), cert.denied, 401 So.2d 262 (Ala. 1981). In determining whether the State presented a prima facie case, this court will consider the evidence in the light most favorable to the State.Hutcherson v. State, 441 So.2d 1048
(Ala.Crim.App. 1983); Smelcher v. State, 385 So.2d 653
(Ala.Crim.App. 1980). Upon a careful review of the record, we find that the State presented a prima facie case of conspiracy; the statements of the co-conspirators were, therefore, properly admitted.
 II
The appellant contends that the evidence is insufficient to sustain the verdict on either count of the indictment. After the State presented a prima facie case of conspiracy, the following evidence was presented:
When Armour went to Glasgow Hollow to purchase an ounce of cocaine, Cook told him that an ounce would cost $1,000. On September 7, 1988, Cook left with Armour's money to purchase cocaine. He returned with the $1,000 because "the police were out." (R. 53). He told Armour to come back the next day. Armour returned the next day to purchase cocaine. When Armour and Cook met with Nathaniel Walker, Cook told Walker that they were looking for an "o.z." (R. 58). Walker said he would try to get some cocaine and he then made several telephone calls in connection with purchasing an ounce of cocaine. Cook and Armour went to Cook's residence and then went to Stanley Glover's house. Armour, Cook, and Glover returned together to Glasgow Hollow. Cook left and Glover got into Armour's car. They discussed the purchase of cocaine. Glover told him that Cook was a millionaire from selling small amounts of cocaine and marijuana.
They went to a house on Maple Street. The car that Glover was looking for was not there, so they went to the Chevron station. Glover made several telephone calls. Before the phone rang, Glover told Armour that he was trying to "beep" Frank. The phone rang and Glover talked for approximately one minute. He told Armour that they had to go. They went to Jack's. The marquis in question pulled into the parking lot five minutes later. Glover took the $1,000 and got into the Marquis. Armour could see two figures in the car — Glover and the person driving. Glover returned with the money and told Armour that the person in the Marquis would be back in a few minutes. The Marquis returned in 10 minutes. Glover got the money back from Armour and got back into the Marquis. Armour could see two figures in the car. Glover returned with a clear sandwich bag that contained a white powder which Armour bought as an ounce of cocaine. Glover told Armour that Frank wanted to see the person with whom he was dealing. The driver of the Marquis rolled the windows down and waved. Armour did not see anyone else in the car. The driver of the Marquis was the appellant. The car was registered to the appellant's son.
A.B.C. Agent David Waters testified that he saw the Marquis parked in the appellant's driveway on several occasions. Dale Brown of the Alabama State Forensics Laboratory testified that the white powder which was sold to Armour weighed 25.516 grams and that the powder and compressed material contained cocaine. *Page 1095 
The appellant testified that he had borrowed his son's car for several weeks. He stated that Stanley Glover called him around noon on September 8, 1988, and wanted him to meet a friend of Glover's at Jack's. He testified that he was about to go to the store anyway and that Jack's was on the way. The appellant further testified that he went to meet Glover because he did not want any trouble from him. He drove the Marquis to Jack's. The car did not have air-conditioning and both windows were rolled down. When he drove up, Glover got in his car and told him that a fellow in Glover's car wanted to borrow some money. Glover asked the appellant to lend it to him. Glover had borrowed $25 from the appellant several years earlier and had never paid it back. The appellant told Glover he did not lend money. Glover asked him if he knew anyone who lent money. The appellant told Glover that he did know such a person and the appellant then went to find that person. The appellant testified that he went to the store for milk and came back to Jack's. He parked beside Glover. The person in the car with Glover had the car windows rolled down on both occasions. The appellant had no trouble seeing that person. Glover got into the appellant's car. The appellant told him that the man he was looking for was not at home. He testified that he did not give Glover anything and that Glover did not give him any money. He testified that he did not know Oliver Cook or Nathaniel Walker. He further testified that he did not know where Glasgow Hollow was, and did not have a beeper.
"Where there is legal evidence from which the jury can by fair inference find a defendant guilty, this court has no right to disturb the verdict." Wilbourn v. State,457 So.2d 1001, 1004 (Ala.Crim.App. 1984). See also Johnson v.State, 378 So.2d 1164 (Ala.Crim.App.), writquashed, 378 So.2d 1173 (Ala. 1979). A conviction will not be set aside on the ground of insufficiency unless "allowing all reasonable presumptions for its correctness, the preponderance of the evidence is so decided as to clearly convince this court that it was wrong and unjust."Wilbourn at 1004. See also Minter v. State,543 So.2d 202 (Ala.Crim.App. 1989); Fletcher v. State,460 So.2d 341 (Ala.Crim.App. 1984). Conflicting evidence presents a question for the jury and a verdict rendered thereon will not be reversed on appeal. Knight v. State,548 So.2d 647 (Ala.Crim.App. 1989); Congo v. State,477 So.2d 511 (Ala.Crim.App. 1985). We find that the evidence is sufficient to sustain the appellant's conviction on both counts of the indictment.
 III
The appellant next contends that the court erred in charging the jury that an element of conspiracy is that the defendant knew or should have known the general purpose of the agreement. The appellant cites the following charges as error:
 "The State must prove by credible evidence beyond a reasonable doubt that the Defendant knowingly agreed with one or more persons, and I will put in there knowingly agreed or should have known, well, knowingly agreed with one or more persons, to wit, Stanley Glover, Nathaniel Walker and Oliver Cook to sell, furnish, manufacture, give away, or deliver or distribute a substance known as cocaine." (R. 327-28).
 "Two, you must be convinced, the State must convince you beyond a reasonable doubt that the Defendant knew or should have known the general purpose of the agreement." (R. 328-29).
 "That the Defendant was engaged in an unlawful conspiracy between two or more people. Two, that he knew or should have known the general purpose of the agreement." (R. 330).
 "If you are convinced beyond a reasonable doubt that the Defendant knew or should have known that one with whom he agrees has in turn agreed with others or will agree with another, thus making more than two, three or four, will agree with others to effect the same criminal effect, he should be deemed to have agreed with such person whether or not he knew of the identity of the other people involved in the conspiracy." (R. 331). *Page 1096 
The appellant objected to the jury charge as follows:
 "I would object to the Court's charge wherein the Court stated that in the conspiracy count, the Defendant must have knowingly agreed or should have known — I object to that part." (R. 336).
We need not review the appellant's substantive argument, because he failed to preserve this issue for review. "An objection to an oral charge must be specific and clearly delineate the perceived defect." Davis v. State,440 So.2d 1191, 1194 (Ala.Crim.App. 1983). See also Matkins v.State, 497 So.2d 201 (Ala. 1986); Kyser v. State,513 So.2d 68 (Ala.Crim.App. 1987); Allen v. State,414 So.2d 163 (Ala.Crim.App. 1982). The fourth charge which the appellant cites as error clearly differs from the previous three charges and tracks the language of Ala. Code (1975) §13A-4-3(b). Thus, without commenting on the propriety or impropriety of the other cited charges, we find that the trial court was not clearly informed as to the appellant's objection. Furthermore, there was never any adverse ruling on the objection. See Leonard v. State, 551 So.2d 1143
(Ala.Crim.App. 1989); Cowgill v. State, 426 So.2d 517
(Ala.Crim.App. 1982).
 IV
The appellant next contends that the convictions are due to be reversed because, he argues, improper comments made by the State during closing arguments unlawfully influenced the jury. We will consider these comments separately below.
 A
The appellant contends that the State improperly commented on his post-arrest silence. The record reveals that the appellant was arrested at his home and then was properly advised of hisMiranda rights and that he appeared to understand those rights. After being advised of his rights, he refused to sign a form stating that he had been advised of his rights "without his attorney looking at it first." (R. 189-190). The appellant was not questioned at the time of his arrest. Agent Waters testified that on the way to trooper headquarters, the appellant voluntarily stated that he was there [at Jack's] but that he did not sell anything. The appellant also testified at trial as to making this statement. After he arrived at trooper headquarters, the appellant also voluntarily stated that he had just tried to trick someone.
A review of the closing argument reveals that the prosecutor was simply challenging the appellant's testimony concerning his reasons for meeting Stanley Glover at Jack's. The appellant voluntarily waived his Miranda rights by making a statement. Thus, the prosecutor could properly challenge this statement in light of the appellant's trial testimony. SeeBogan v. State, 529 So.2d 1029 (Ala.Crim.App. 1988). Thus, the prosecutor's comment did not constitute an improper comment on what the appellant contends was post-arrest silence.See, e.g., Bogan. Argument by the prosecution concerning omissions and inconsistencies in the defendant's version of the case is not improper. Speigner v.State, 369 So.2d 39 (Ala.Crim.App.), cert.denied, 369 So.2d 46 (Ala. 1979). See also Sasser v.State, 494 So.2d 857 (Ala.Crim.App. 1986). "Control of closing arguments rests within the discretion of the trial judge and we will not reverse unless there is an abuse of discretion." Sasser at 860. We see no such abuse here.
 B
The appellant also argues that the State improperly commented on the failure of the other co-conspirators to testify and, thus, that his right to due process and his right to confront the witnesses against him were violated. This argument has no merit. The record reveals that the appellant's attorney was the first to comment on the absence of testimony by the co-conspirators. He did this on at least three occasions and also referred to the co-conspirators as drug pushers and dope peddlers. The State's comments concerning the co-conspirators were made during rebuttal and in direct response to the comments of the appellant's attorney. The State's remarks *Page 1097 
were proper under the "reply in kind" doctrine. Cason v.State, 515 So.2d 721 (Ala.Crim.App.), cert.denied, 515 So.2d 725 (Ala. 1987); Dossey v.State, 489 So.2d 662 (Ala.Crim.App. 1986).
For the reasons set forth above, this case is due to be, and it hereby is, affirmed.
AFFIRMED.
All the Judges concur.