Appellant was indicted for the offense of first-degree theft of property and second-degree receipt of stolen property. After a trial by jury, appellant was found guilty of the offense of theft of property in the first degree as charged in count one of the indictment. Subsequent to the return of the jury verdict, a sentencing hearing was scheduled and the provisions of the Alabama Habitual Felony Offender Act were invoked. The trial court sentenced the appellant to a term of thirty years and one day in the state penitentiary. From said conviction and sentence, this appeal follows.
On appeal, the following issues are raised: (1) Did the State present sufficient evidence to support a conviction of theft in the first degree? and (2) Did the trial court properly consider two "convictions" for purposes of the Alabama Habitual Felony Offender Act, since the present offense was committed prior to the time sentence was imposed for the earlier offenses? For the reasons outlined below, neither argument has merit and the cause is due to be affirmed.
WARREN HOWARD PATTON
On behalf of the State, Warren Howard Patton was called to the stand and testified that on October 12, 1983, he was a resident of 504 Withers Drive, Northeast, Huntsville, Alabama. On the day in question, he had traveled to Lexington, Kentucky, but had left his 1973 Ford pickup truck at his residence in Huntsville, Alabama. The witness stated that he had an agreement with a neighbor, Joseph Ernest Wilbourn, to keep an eye on his Huntsville property while he was in Kentucky. On the morning of Tuesday, October 12, Mr. Wilbourn called the witness to tell him that his truck had been stolen. After he returned to Huntsville, the witness examined a truck the police had impounded, and he identified it as his truck.
The witness explained that he was able to identify the impounded truck as his truck, because his truck had a light punched out and two speakers in the back seat were gone. The witness stated that at the time the truck was stolen it was worth between $1,200 and $1,500. The witness stated that while he was out of town he kept the truck locked and kept the keys locked in his house. Additionally, the witness stated that no one had been given permission to use the truck in his absence.
JOSEPH E. WILBOURN
On behalf of the State, Joseph Ernest Wilbourn testified that he is a neighbor of Mr. Patton and resides at 508 Withers Avenue. In the early morning of October 12, 1983, the witness was on his front porch *Page 513 
and heard the sound of an engine starting. When he heard the engine stop, the witness looked toward Mr. Patton's house and noticed that the hood of Mr. Patton's truck was up. Since the witness knew that no one was supposed to be at the Patton residence, he immediately called the police. The witness reported the stolen truck around 12:15 or 12:20 a.m. and the police arrived within five minutes to investigate. The witness talked briefly to the police and told them that he had not observed anyone in the truck. The police left to follow the truck and returned around 12:45 or 1:00 a.m. with the truck in tow.
TERRY LEE SPAIN
On behalf of the State, Officer Spain testified that he is employed as a police officer with the City of Huntsville Police Department. On October 12, 1983, the witness was working the third shift uniform patrol. The witness received a dispatch at 12:23 a.m. and responded to the call, along with Officer Larry Osborn, who was in another patrol unit. The witness said that when he arrived on the scene approximately three or four minutes later, he began to search for a stolen vehicle which had been described in the dispatch as a brown Ford pickup truck.
At this time, the witness observed a brown Ford pickup truck which fit the description and noted that two white males were in the truck. While following the vehicle, the witness relayed the tag number to the dispatcher. When the dispatcher determined that the tag had been issued to someone who lived at 504 Withers, the witness stopped the vehicle. According to the witness, the appellant was "under the wheel of the motor vehicle when I got him out." Along with the appellant, the witness stated that another person, Houston David Wilbourn, was in the stolen truck. After the appellant was placed in Officer Spain's patrol car, the witness realized that the truck could not be turned off because there was no key in the ignition. The appellant was advised of his Miranda rights and stated that he understood his rights. The appellant also stated that he understood that he could waive those rights. The appellant then told the witness that "his grandpa" owned the truck and there was no key in the ignition since they had "wired" it.
At 12:47 a.m., the impoundment truck was called to retrieve the vehicle. The witness stated that from the time he left Withers Drive to the time he stopped the brown pickup truck, approximately a minute and a half elapsed. During the impoundment, the hood of the truck was lifted in an attempt to determine how the truck could be turned off. At that time, the witness observed a wire running from the coil to the battery. The wire which was used appeared to be an extension cord with one end attached to the coil and the other end to the battery.
On cross-examination, Officer Spain testified that when the initial dispatch call was taken at 12:23 a.m., both he and Officer Osborne went to the residence on Withers Street. The witness stated that he did not stop at the residence, but proceeded toward Lee High School in search of the stolen vehicle. The witness continued toward Highway 72 East, and approximately a minute and a half later, he observed a truck which matched the description of the stolen vehicle. It took a few minutes to run the tag check, and then, the witness stated, he turned on his blue lights. The appellant cooperated with the witness and was placed in the patrol car.
LARRY OSBORN
On behalf of the State, Larry Osborn, Police Officer, City of Huntsville, testified that he was working the third shift the early morning of October 12, 1983. Around twenty-three minutes after twelve, he received a dispatch reporting the theft of a truck at 504 Withers Drive. When he arrived at 508 Withers, the witness talked to Joseph Wilbourn, the person who had made the report. Based on Mr. Wilbourn's statement, a description of the stolen vehicle was given out over the radio. Approximately eight or ten minutes after the dispatch was first received, this witness heard Officer Spain stating that he had *Page 514 
spotted the stolen truck. When the witness arrived at the scene, Officer Spain already had the two subjects, appellant and David Houston Wilbourn, standing by the truck. The witness stated that he was present when Officer Spain read the appellant his rights and asked him who owned the truck. According to the witness, the appellant stated that it belonged to his "grandpa" but the appellant did not know what his grandpa's name was. In addition to the appellant, David Houston Wilbourn was also placed under arrest that night.
KEITH HOPKINS
On behalf of the State, Keith Hopkins testified that he works in the automobile theft division of the Huntsville Police Department. According to the witness, the value of a 1973 Ford F-100 pickup truck would be between $800 and $1,000. The witness stated that he obtained warrants for the arrest of the appellant and David Houston Wilbourn and subsequently interviewed the latter. On cross-examination, the witness stated that David Houston Wilbourn told him that he was "walking out 72 when Barry Congo picked him up in that truck." The witness testified that he had been informed that "Tony Hall" might be involved, but he had never talked with him. The witness also stated that no fingerprint check had been done on either the battery or the truck.
After the above testimony had been given, the State rested. Outside the presence of the jury, defense counsel made a motion for judgment of acquittal as to counts one and two of the indictment. Additionally, defense counsel renewed his motion that the State make an election as to the counts in the indictment. After the trial court overruled the defense motions, but before the jury was brought back into the courtroom, the court questioned Tommy Hall, a witness called on behalf of the defendant. Tommy Hall stated that he was twenty years old and that he knew he had the right to remain silent and that anything he said would be used against him. He stated that he had not been promised anything nor coerced. With the knowledge of these rights, Hall stated that he would be willing to testify. At this point, the court asked Hall specific questions concerning his understanding of these rights.
The court went on to instruct Hall that perjury is a felony and the penalty for perjury could be ten years and a fine of $5,000. Additionally, Hall was told that he had the right to remain silent and, if he did speak, that the statements he made could be used against him. After the court asked Hall several times if he wished to have legal counsel appointed to him, Hall finally indicated that he did and Attorney Albert Swain was appointed to represent Hall. After a brief recess, appointed counsel informed the trial court that Hall would testify but would exercise his rights under the Fifth Amendment to the extent that an answer might tend to incriminate him. At this point, the jury was recalled.
TOMMY HALL
On behalf of the defense, Tommy Hall testified that he was twenty years old and had not been promised anything, coerced, or threatened in order to testify. On October 12, 1983, at approximately 12:15 a.m., Hall went to 504 Withers Drive and popped the hood of a truck which was there. When he discovered that there was not a battery in the truck, he "went and got one." After he got a battery from his grandmother's house, Hall took it back, put it in the truck, and hot-wired the truck. At this point, the following took place in the record:
 "Q. I want you to tell the jury how you hot wire an automobile.
 "A. You just put the wire hot on the coil and hot on the battery.
 "Q. Okay, sir, where did you get the wire to hot-wire it?
"A. Jerked it out of the truck.
"Q. What truck?
"A. The truck.
"Q. Okay, the truck that you took; is that right?
"A. Yes, sir.
"Q. Okay." *Page 515 
At this point, Hall's court-appointed attorney asked for a recess. After the recess, the witness began to invoke the Fifth Amendment. The only other question that he answered was, "[W]ho was with you when you went to Mr. Patton's house that might?" to which Hall responded, "Nobody." At this point, the court personally interrogated the witness and determined that Hall is employed by his uncle, Stanley Congo, and that the appellant is also Stanley Congo's nephew. Thus, Hall and the appellant are cousins.
After the defense rested, the jury returned a verdict of guilty of theft of property in the first degree as charged in count one of the indictment. After the verdict was returned, sentencing was postponed until a pre-sentence investigation could be prepared. The State expressed its intent to invoke the provisions of the Habitual Felony Offender Act and noted that copies of the prior convictions had been provided to defense counsel.
At the sentencing hearing, the court noted that "this offense was committed just a matter of days after Mr. Congo had entered a plea of guilty to [certain] other offenses, and was waiting sentencing by [this] court." Defense counsel argued that since he had not been sentenced on the two occasions when he entered the guilty pleas that they should not be considered for purposes of the Habitual Felony Offender Act. The court noted, however, that seven days after the appellant entered the pleas of guilty to the prior offenses, he committed the present offense. Additionally, the court stated that the appellant was subsequently sentenced on those offenses before this case came on for trial. After the court sentenced the appellant to thirty years in prison, to be served consecutively with sentences already imposed by the court, notice of this appeal was given.
 I
Appellant submits that the evidence presented by the State was, at most, sufficient to convict the appellant of receipt of stolen property in the second degree, but did not prove that the appellant was guilty of theft of property in the first degree. However, in reviewing a conviction based upon circumstantial evidence, this Court is required to consider the evidence in a light which is most favorable to the State. Cumbov. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied,368 So.2d 877 (Ala. 1979); Barnes v. State, 429 So.2d 1114
(Ala.Cr.App. 1982).
Under Alabama law, the offense of theft of property in the first degree is defined in § 13A-8-3, Code of Alabama (1975), as follows:
 "(a) The theft of property which exceeds $1,000.00 in value, or property of any value taken from the person of another, constitutes theft of property in the first degree.
 "(b) The theft of a motor vehicle, regardless of its value, constitutes theft of property in the first degree."
Based upon the testimony outlined above, it is apparent that the evidence presented by the State was sufficient to prove all of the elements of theft of property in the first degree, since the evidence showed that: (1) the theft of the truck occurred shortly after midnight and was immediately reported by a neighbor who observed the theft; (2) a short time later (less than fifteen minutes) the appellant was apprehended driving thestolen vehicle; (3) when apprehended, the appellant stated that the truck belonged to his "grandpa" but he did not know what his grandpa's name was; and (4) the appellant admitted at the time he was taken into custody, after being advised of hisMiranda rights, that he did not have a key for the ignition and had "wired" the vehicle in order to start it.
At trial, the appellant did not take the stand and presented only the testimony of one witness, Tommy Hall. On appeal, appellant argues that Hall's testimony proved that it was Hall who actually stole the truck, and the appellant merely drove the stolen vehicle. However, it was established that Hall and the appellant are cousins and that Hall is employed by their uncle, Stanley Congo. Since this greatly *Page 516 
affected the credibility of Hall's testimony, it is apparent that the jury chose to believe the State's presentation of evidence and to disbelieve the attempt on the part of defense counsel to make its own witness, Tommy Hall, admit to the commission of a felony under oath. Additionally, any conflict presented by the testimony of Hall was a question for the jury to consider. Ragsdale v. State, 448 So.2d 442 (Ala.Cr.App. 1984).
In general, the jury is in the best position to decide the credibility of witnesses, and this Court will not reweight the evidence. Walker v. State, 416 So.2d 1083 (Ala.Cr.App. 1982). "The weight of the evidence, the credibility of the witnesses, and inferences to be drawn from the evidence, where susceptible of more than one rational conclusion, are for the jury alone." [Citations omitted.] Id. at 1089. Thus, it is apparent that the State met its burden of proof and presented a prima facie case of theft of property in the first degree.
 II
The second issue presented by the appellant concerns the propriety of the trial court's application of the Alabama Habitual Felony Offender Act to enhance the punishment for the crime. Under the Habitual Felony Offender Act, the trial court must invoke its provisions in "all cases when it is shown that a criminal defendant has been previously convicted of any two felonies and after such convictions has committed another felony." § 13A-5-9 (b)(2) Code of Alabama (1975). Appellant argues that where a defendant enters a plea of guilty, but has not been sentenced, and then commits another felony, that no "conviction" exists which can then be used against him for sentence enhancement purposes. In the present case, evidence was introduced at the sentencing hearing which indicated that the appellant had entered guilty pleas to two felony offenses, and, seven days later, before the trial court had sentenced him, committed the present offense.[1]
As this Court has noted, a "plea of guilty is a conviction itself." Jones v. State, 431 So.2d 1367, 1372 (Ala.Cr.App. 1983). Thus, it would appear to be proper, in the present case, to invoke the provisions of the Act. Appellant, however, argues that the two felony offenses to which he had pleaded guilty were not "final" at the time he committed the present offense, since sentence had not been entered. It is apparent that appellant's argument is an attempt to interpolate the word "final" into the provisions of the Alabama Habitual Felony Offender Act. Based upon the plain wording of the statute, however, such a position is without merit.
Additionally, this Court has already concluded that appellant's position is in "conflict with enactments of the Legislature, judicial rules, and uniform judicial opinions in Alabama," Summerhill v. State, 436 So.2d 2, 5 (Ala.Cr.App. 1983).[2] In Summerhill, this court considered the identical issue raised by the appellant in the instant case and decided the question against the appellant. In so concluding, this Court, per Honorable Leigh M. Clark, Retired Circuit Judge, stated as follows:
 "We now hold, . . . in firm adherence to Watson v. State [392 So.2d 1274 (Ala.Cr.App.), cert. denied, 392 So.2d 1280 (Ala. 1981)] and Burgess v. State, [412 So.2d 298 (Ala.Cr.App. (1982)] that a previous `adjudication' of guilt of a felony constitutes a previous `conviction' of a felony whenever the term `previous conviction' of a felony, or its equivalent is *Page 517 
used in the Habitual Felony Offenders law of Alabama." Id.
Thus, the trial court correctly concluded that the appellant's prior convictions should be used for sentence enhancement purposes.[3]
For the reasons outlined above, the decision of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] Note that the trial judge who accepted the guilty pleas was also the trial judge in the present action and thus had personal knowledge of the facts. Also note that sentence had been imposed on the previous felonies prior to the time the present action came to trial.
[2] Note that other jurisdictions have also concluded that, for purposes of the recidivist statutes, the word "conviction" means the establishment of guilty by plea or verdict,independent of sentence. Pryor v. State, 453 A.2d 98, 100
(Del.Super.Ct. 1982); State v. Larranaga, 77 N.M. 528,424 P.2d 804, 805 (1967); Rogers v. State, 260 Ark. 232, 234,538 S.W.2d 300 (1976); People v. McCuiston, 55 Cal.Rptr. 482, 489,246 Cal.App.2d 799 (1966).
[3] While they are, of course, not conclusive of an interpretation of the Alabama Habitual Felony Offender Act, note that at least two other Alabama cases indicate that the mere fact that an appeal is pending would not preclude the use of a jury verdict of guilty as a "conviction." Ex parte AlabamaState Bar, 285 Ala. 191, 230 So.2d 519 (1970) (disbarment proceeding construing the provisions of the "Rules Covering the Conduct of Attorneys in Alabama"); Evers v. Medical LicensureCommission of Alabama, 421 So.2d 89 (Ala. 1982) (construction of the term "conviction" as it relates to the revocation or suspension of a physician's license to practice medicine). Also note that at least one other jurisdiction has concluded that the term "conviction" for purposes of its habitual offender statute refers to a conviction at the trial level and, thus, would include a conviction which was under appeal at the time of commission of the subsequent offense. State v. Heald,382 A.2d 290, 299 (Me. 1978).