Thomas Lee Turrentine was charged by indictment with theft of property in the first degree, in violation of § 13A-8-3, Code of Alabama 1975. The jury found him "guilty as charged in the indictment," and the trial judge sentenced him to nine years in the State penitentiary.
The appellant raises three issues on this appeal. Because of the interrelated nature of these issues, they will be combined in the two parts of this opinion.
 I
The appellant contends that the trial court should have granted his motion for judgment of acquittal at the close of the State's case-in-chief and should have granted his post-trial motions for judgment of acquittal and for a new trial. He argues that the State presented insufficient evidence to sustain his conviction for theft of property in the first degree. Specifically, the appellant claims that the State failed to prove that this appellant "obtained or exerted use of the vehicle with [the] intent to deprive" the owner of it. (Appellant's brief at 12.)
Section 13A-8-3, states in relevant part:
"(b) The theft of a motor vehicle, regardless of its value, constitutes theft of property in the first degree."
Section 13A-8-2, "theft of property" as follows:
 "A person commits the crime of theft of property if he:
 "(1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property. . . ."
The testimony at trial revealed that, on the afternoon of May 31, 1989, Rita Johnson *Page 1007 
and her daughter, Jennifer Johnson, met at the Belk Hudson store in Cullman, Alabama, to do some shopping. They arrived in separate automobiles, with Jennifer driving her 1985 Buick Regal Grand National. Both Rita and Jennifer testified that when they came out of Belk Hudson at approximately 4:50 p.m., the Grand National was not in the parking lot. Both women further stated that they had not given anyone permission to use the automobile.
Later that day, Maurice Creasy was working at the 292 Truck Stop in Cullman County, Alabama, when one of his co-workers told him that someone was in his automobile, a 1980 Buick Regal. Creasy testified that he walked out to his automobile, "jerked" the door open, and asked the intruder, later identified as Danny Malone, what he was doing. Creasy noticed that one side of Malone's face was red. Malone told Creasy that a radiator cap had blown off on him. According to Creasy, Malone then took off running toward the gasoline pumps. Creasy stated that he looked into his automobile and noticed that the steering column was broken. He hollered at his co-worker "to call the law." (R. 55.)
Creasy next testified that he jumped into his automobile and pursued Malone. Creasy stated that Malone ran to a black Grand National, where two people were putting water into the radiator. He stated that Malone jumped into the driver's side of the Grand National and the other two, later identified by Creasy as this appellant and Jeanie White, got into the passenger's side of the Grand National.
Creasy testified that the Grand National took off down Highway 91 at a high rate of speed and that he pursued it in his automobile. After about four miles, however, he noticed the Grand National being pulled to the side of the road and parked. According to Creasy, Malone and White jumped out of the Grand National and ran into the woods. The appellant also got out but stood by the automobile for a moment before going into the woods.
Creasy stated that he went a couple of miles farther to a country store and called the sheriff's department. Sgt. Ted Manus with the Cullman County Sheriff's Department arrived about 15 to 20 minutes later. Sgt. Manus, upon learning that the three suspects had fled into the woods, called in additional assistance from the sheriffs department and the Cullman Police Department.
Following a 45 minute search, the appellant was found lying in some bushes a few feet from the road. He was placed under arrest and was transported to the city jail. All of the officers who came in contact with the appellant noted a strong odor of alcohol, but all of the officers stated the appellant, who was wearing only blue jeans and flip-flop shoes, had no problem walking back to the police car from where he was found.
Officer Dennis Swafford with the Cullman Police Department, who transported the appellant to the city jail, testified that the appellant asked "if we had the other two," and stated, "I don't know what you got me for. They are the ones that got it." (R. 98.)
Sgt. Manus also testified that, while a search was being conducted off of Highway 91, he received a call over his police radio that another automobile, a 1981 Buick Regal, had been reported stolen nearby. He headed in that direction but learned that the automobile was last seen headed south on 1-65. A short time later, the automobile was stopped by a Fultondale, Alabama, police officer. Malone and White were arrested. Sgt. Manus went to Fultondale and transported White back to Cullman County.
Investigator James Allison with the Cullman County Sheriff's Department also testified for the State. He stated that on June 5, 1989, he took a statement from this appellant after informing the appellant of his Miranda rights and after having the appellant sign a waiver of rights form. After laying the proper predicate, Investigator Allison read the appellant's statement into evidence. In substance, the statement revealed that this appellant, Malone and White went to Cullman and that he said that "[s]ometime after we got there we changed cars." (R. 111.) The appellant *Page 1008 
also told Allison that Malone said that he (Malone) would sell the stolen automobile to his sister in Jasper, Alabama. The appellant stated that they went down the highway, that the car overheated, that he ran "through some bushes and a police dog caught [him]" (R. 112.)
Testimony at trial revealed, through several of the witnesses, that the steering columns had been broken in all three of the automobiles and that all three automobiles had been "hot-wired" (or started without the aid of keys).
Based on this testimony, we hold that the trial judge properly overruled the appellant's motion for judgment of acquittal, which was made at the close of the State's case, since the State presented ample evidence to create a question of fact as to whether the appellant "intended" to participate in the theft of Johnson's Grand National automobile. Viewing the evidence before the trial court at the time the motion was made, we conclude that the evidence raised a reasonable inference of the appellant's "intent." McCord v.State, 501 So.2d 520, 525, 528-29 (Ala.Cr.App. 1986),cert. denied (Ala. 1987). As we stated inMcCord, 501 So.2d at 528, intent is a question for the jury to resolve in a prosecution for theft. The question of the appellant's guilt was properly submitted to the jury. SeeCumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978),cert. denied, 368 So.2d 877 (Ala. 1979).
Following denial of that motion, the appellant called Officer Lynn Wood of the Cullman Police Department to testify in his behalf. Officer Wood testified that, in his investigation of the theft of the Grand National, he discovered that Malone was the one who removed the automobile from the Belk Hudson parking lot and that Malone was the one who drove the automobile.
The appellant also testified. He stated that on the morning of May 31, 1989, he and White were in his apartment in Decatur, Alabama. According to the appellant, Malone's mother and sister dropped Malone off at the appellant's apartment at 9:00 a.m. Malone brought with him a case of beer.
The appellant admitted that he was drinking heavily and was smoking marijuana on May 31, 1989. After Malone had been at his apartment for a while, Malone asked the appellant if he would take Malone to his sister's house in Decatur. White said she would take Malone in her automobile if the appellant would agree to accompany them. The appellant agreed.
The appellant said that when they arrived at Malone's sister's home, that his sister would not let Malone stay with her, so Malone asked if White would take him to his other sister's home in Jasper, Alabama. White allegedly said that she would take him as far as Cullman, but no farther, since she did not have enough gasoline or money.
The appellant testified that while en route to Cullman he passed out. He said that when he awoke, only White was in the car with him and they were travelling down Highway 31 toward Hanceville, Alabama. He claimed that he passed out again, and that the next thing that he remembered was waking up in the Grand National automobile at the 292 Truck Stop. He stated that he got out of the automobile and noticed White standing in front of the automobile, pouring water into the radiator. He testified that he went to the bathroom and that, when he returned, he helped White put water in the radiator. He claimed that he asked White whose automobile it was, and she said that Malone had borrowed it from someone he knew.
He further testified that he placed the radiator cap on and then heard Malone holler, "get in the car." (R. 142.) According to the appellant, Malone took off at a high rate of speed, and he told Malone to slow down. He said Malone then told him for the first time that the automobile was stolen and that the police were after them. The appellant claimed that he told Malone to pull over and let him out, but that Malone refused. After a few minutes, he said, the automobile overheated and quit running. He said Malone pulled the car to the side of the road and he and White took off running into the woods. The appellant claimed that he stood by the automobile for *Page 1009 
a few minutes and then walked off into the woods. He stated that Malone and White returned and urged him to go with them, but that he refused. He claimed that he sat down in some bushes and passed out again, and that the next thing he remembered was the police placing him under arrest.
The appellant did not reassert his motion for judgment of acquittal. Rather, he made a written post-trial motion for judgment of acquittal and a motion for new trial. Both of these methods are sufficient ways to test the sufficiency and weight, respectively, of the evidence at trial. See Rules 12.3 and 13(a), A.R.Crim.P. (Temp.).
Reviewing the evidence in a light most favorable to the State, we conclude that a sufficient question of fact was established to present the issue of the appellant's guilt to the jury. Cumbo v. State, 368 So.2d at 874-75. The fact that conflicting testimony was presented as to the appellant's knowledge of the theft and of his intent to assist in depriving the rightful owner of the automobile does not alter our holding. The question of resolving conflicting testimony is one for the jury. Congo v. State,477 So.2d 511, 516 (Ala.Cr.App.), cert. denied (Ala. 1985). "The weight of the evidence, the credibility of the witnesses, and inferences to be drawn from the evidence, where susceptible of more than one rational conclusion, are for the jury alone." Walker v. State, 416 So.2d 1083, 1089
(Ala.Cr.App. 1982), quoted in Congo, 477 So.2d at 561.See also Ragsdale v. State, 448 So.2d 442 (Ala.Cr.App. 1984).
In McCord, 501 So.2d at 528-29, discussing "intent", we stated:
 " 'Intent, . . . being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.' Pumphrey v. State, 156 Ala. 103, 47 So. 156, 157 (1908)."
The jury could reasonably infer from the evidence adduced at trial that this appellant participated in the theft of Johnson's automobile. The appellant's testimony of voluntary drunkenness, likewise, does not act as a bar to his conviction.See Lee v. State, 439 So.2d 818, 820 (Ala.Cr.App. 1983).
The conviction is not due to be reversed based on the the appellant's challenge to the sufficiency of the evidence.
 II
The appellant also contends that the trial judge committed reversible error by refusing to give his requested jury charges numbered 2A, 2B, and 16, and by failing to include an affirmative charge (that the appellant was not guilty of the charged crime) in his instructions to the jury.
A review of the record reveals that, after the juryretired to deliberate, the appellant objected to the trial judge's failure to give his requested charge number 19 (on aiding and abetting). An objection to the judge's instructions to the jury after the jury has retired to deliberate
comes too late and does not preserve the alleged error for review by this court. Allen v. State, 414 So.2d 989,991 (Ala.Cr.App. 1981), aff'd, 414 So.2d 993 (Ala. 1982).
Furthermore, the appellant failed to object at trial to the failure to give instructions 2A, 2B, and 16, and the affirmative charge. His failure to object constitutes a waiver of these issues. Rule 14, A.R.Crim.P. (Temp.); Gay v.State, 562 So.2d 283 (Ala.Cr.App. 1990).
For the reasons stated herein, the judgment of the trial court is due to be, and the same is hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 1010