KELLUM, Judge.
The appellant, Cornelius Sinclair Sur-ratt, was convicted of rape in the second degree, a violation of § 13A-6-62, Ala. Code 1975. The circuit court sentenced Surratt to 12 years’ imprisonment and ordered Surratt to pay a $1,000 fine, $100 to the crime victims compensation fund, and court costs.
The evidence presented at trial established the following pertinent facts. S.J. was suffering from breast cancer and sent her daughter, J.H., to live with Surratt and Chiquitta Surratt. J.H. lived there for approximately a year and a half. Surratt was the assistant basketball coach at Beauregard High School, where J.H. played basketball, and he helped J.H. with her basketball game. In March 2010, J.H. and Surratt’s relationship began to change. J.H. started receiving text messages from Surratt about a girl Surratt said he “really liked.” (R. 232.) J.H. told Surratt that he was a “big dog” and that he should approach this girl in whom he was interested. (R. 235.) J.H. understood that Surratt was married to Chiquitta, but J.H. was not bothered by Surratt’s interest in other women. In late March, J.H. and Surratt were in Surratt’s house when Surratt informed J.H. that she was, in fact, the girl he had been telling her about. Surratt also told J.H. that he and Chiquitta were no longer having sex and that Surratt could no longer get an erection with Chi-quitta.
After Surratt disclosed his interest in her to J.H., Surratt asked J.H. for help with his erectile dysfunction. Surratt asked J.H. to “try to have sex with him to see if [he] could ... have an erection.” (R. 240.) J.H. initially refused, but finally gave in to Surratt’s demands on or about March 20, 2010. Surratt made a pallet on the floor of his bedroom and after J.H. removed her clothing Surratt “tried to *837 stick his penis in [J.H.], but it didn’t work. [J.H.] told [Surratt he] was hurting [her] and to stop, and [Surratt] stopped.” (R. 243.)
A few weeks later, in April 2010, Surratt explained to J.H. that she could make some extra money by joining an organization of which Surratt was a member. Sur-ratt told J.H. she would be paid $200 either every other week or every month once she was a member. According to Surratt, in order to join the organization and get paid, J.H. would have to have sex with him. Surratt also explained to J.H. that she would need to respond to various e-mail messages and “do what the [e-mail messages] say to do” once she was a member of the organization. (R. 247.) After this conversation, J.H. and Surratt had sex in Surratt’s vehicle at 2:00 a.m. while the rest of the family was asleep inside Sur-ratt’s house. This sex act occurred in the first or second week of April when J.H. was 15 years old.
After J.H. and Surratt had sex in April, J.H. started receiving e-mail messages from “Boris” and “a girl named Ta-ta” from those individuals’ Yahoo e-mail addresses. (R. 248.) Boris and Ta-ta were J.H.’s contacts with the organization, and J.H. was asked by them to recruit another person into the organization. J.H. failed to recruit anyone to join, and according to J.H., Boris and Ta-ta e-mailed her expressing their displeasure with her work for the organization. J.H. showed the email to Surratt, and Surratt told her that the organization was angry. Surratt told J.H. that Ta-ta wanted J.H. to be punished. Surratt told J.H. that her punishment would be to have sex with him again. Surratt and J.H. again had sex in the back of Surratt’s vehicle in the early morning when J.H. was 15 years old.
In another e-mail, Boris told J.H. that she and Surratt would have to make a video recording of them having sex. Sur-ratt used his cellular telephone to record him and J.H. having sex. After watching the video with J.H., Surratt uploaded the video to his computer and then e-mailed the video to Boris.
J.H. turned 16 years old on May 4, 2010. In June 2010, she asked to be released from the organization. Surratt told J.H. she would have to undergo “sexual punishment” with him in order to leave the organization without being hurt. (R. 264.) After this sexual act, J.H. heard nothing more about the organization. At no time did J.H. receive any e-mail messages from Boris or Ta-ta when she was in Surratt’s presence.
Toward the end of J.H.’s sexual relationship with Surratt, she began telling her friends what was happening to her. J.H.’s friends wanted her to go to the authorities, but J.H. refused. In August 2010, J.H.’s friends could no longer keep the secret and told people at Beauregard High School. J.H. was called into the office, where a representative from the Department of Human Resources (“DHR”) asked J.H. if she had been abused. J.H. first denied that any abuse had occurred, but eventually admitted to the DHR representative that Surratt and she had been having sex.
Someone in the office telephoned S.J., and she was told that something had happened to her daughter, J.H. When S.J. arrived at J.H.’s school, S.J. was met by J.H. and representatives from the sheriffs department and the Department of Human Resources. J.H. confessed everything that had happened, and told her mother that the sexual relationship she had had with Surratt began in March 2010, before J.H. was 16 years old.
At the trial, Tammy Booth, an investigator with the Lee County Sheriffs Office, testified regarding a statement that she took from Surratt in the course of her *838 investigation. Surratt first denied having sex with J.H. However, when Investigator Booth informed Surratt that his computer was subject to search, Surratt gave a second statement, admitting that he had had “consensual” sex with J.H. “about three times” but that all sexual activity between the two of them took place in “around May or June” after J.H.’s 16th birthday. (R. 376.) Forensic Technology Examiner Laurie Evans testified regarding videos taken from Surratt’s computer. According to Evans, there was a video on Surratt’s computer that appeared to depict J.H. and Surratt having sex. The time stamp on the video indicated that it was as created on May 31, 2010.
During Surratt’s case-in-chief, J.H.’s grandmother and Chiquitta testified that J.H. told them that the sexual relationship did not begin until J.H.’s 16th birthday. Chiquitta further testified that J.H. stated that she did not want to testify against Surratt at the grand jury, but that she was going to testify anyway because of S.J.’s insistence.
Surratt testified in his own defense. According to Surratt, the first time that he and J.H. had sex was on May 4, 2010— J.H.’s 16th birthday. Surratt denied ever having sex with J.H. in March or April 2010.
Surratt’s case was tried before a jury. After both sides had rested and the court had instructed the jury on the applicable principles of law, the jury found Surratt guilty of rape in the second degree. On June 7, 2012, Surratt filed a timely motion for new trial, in which he alleged that his trial counsel was constitutionally defective. This appeal followed.
I.
Surratt first contends that he was denied constitutionally effective assistance of counsel. Specifically, Surratt argues that his trial counsel failed to object to the reading into evidence of portions of a transcript of a DHR hearing during which A.M., a friend of J.H., stated that J.H. told her in March 2010 that Surratt had raped her earlier that month. Surratt asserts that the admission of A.M.’s statement: 1) violated his Sixth Amendment right to confront adverse witnesses; 2) was impermissible because the probative value of the statement was outweighed by its unfair prejudice; 3) was impermissible character evidence; 4) was improper because A.M. lacked personal knowledge of the matter; 5) was impermissible hearsay “without an exception”; and 6) was impermissible hearsay within hearsay. Surratt argues that counsel’s failure to raise any of these objections constituted constitutionally defective assistance under the Sixth Amendment.
When Surratt testified at trial, the State asked Surratt to read an excerpt from the transcript of a DHR hearing, resulting in the following exchange:
“[Prosecutor]: I am going to submit to you that what you are reading is a portion of the transcript between — questions asked to [A.M.] at this hearing. And I am going to ask the question that was asked here and I am going to ask that you read the answer that [A.M.] provided—
[[Image here]]
“[Prosecutor]: They are asking about whether or not [A.M.] knows you. And the question was:
“[Question from transcript]: All right. Do you — did you more-so know him as being the uncle of J.H. or the coach.
“[Prosecutor]: And you—
“[Surratt reading A.M.’s answer]: The uncle of J.H.
“[Question from transcript]: All right. I want to draw your attention back to I guess the springtime. Did *839 you have an occasion to have a conversation with J.H. about an incident that took place with her uncle?
“[Surratt reading A.M.’s answer]: Yes, ma’am.
“[Question from transcript]: All right. And was that in April or was that in May? I am sorry. Was that in March or was that in April?
“[Surratt reading A.M.’s answer]: In March.
“[Question from transcript]: All right. And what did she tell you in March?
“[Surratt reading A.M.’s answer]: She told me that she was raped by him.”
(R. 504.)
After the jury had retired to deliberate, a question was sent by the jury to the circuit court asking why A.M. was not present to testify. The State explained to the circuit court that A.M. was a student in Tuscaloosa and that she did not have transportation to come to the trial and testify herself. The State explained that A.M. was under oath during the DHR proceeding and that the statements were “admitted into evidence because [the statement] was read in and it was an under oath testimony from a hearing.” (R. 585.) The circuit court noted that there was a 100-mile limit on subpoenas and then provided the jury the following instruction with regard to the question:
“I cannot answer factual questions for you, but all I can tell you is the witness was unavailable for trial. The witness is outside of the county, and that’s why the transcript was used. And oftentimes when a witness is unavailable for trial if there is prior — if—if there is prior testimony, then that is a method you can use their prior testimony from other proceedings. And I hope that helps answer your question.” (R. 594.) At no point did Surratt’s trial counsel object to the use of A.M.’s statement on the grounds that it violated the Sixth Amendment, that it was unfairly prejudicial, that it was impermissible character evidence, or that the statement was inadmissible as hearsay subject to no exception to the hearsay rule.
In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court articulated two criteria that must be satisfied to show ineffective assistance of counsel. A defendant has the burden of showing (1) that his counsel’s performance was deficient and (2) that the deficient performance actually prejudiced the defense. “To meet the first prong of the test, the petitioner must show that his counsel’s representation fell below an objective standard of reasonableness. The performance inquiry must be whether counsel’s assistance was reasonable, considering all the circumstances.” Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.1987). “ ‘This court must avoid using “hindsight” to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel’s actions before determining whether counsel rendered ineffective assistance.’ ” Lawhorn v. State, 756 So.2d 971, 979 (Ala.Crim.App.l999)(quoting Hallford v. State, 629 So.2d 6, 9 (Ala.Crim.App.1992)).
To meet the second prong of the Strickland test, “the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.” Strickland, 466 U.S. at 687. It is the defendant’s burden to “affirmatively prove prejudice; that is, he ‘must show that there is a reasonable probability, that but for counsel’s unprofessional errors, the result of the proceed *840 ing would have been different.’ ” Lawley, 512 So.2d at 1372 (quoting Strickland, 466 U.S. at 694). Moreover, “[t]he prejudice prong of the Strickland test requires a showing that a different outcome of the trial probably would have resulted but for counsel’s allegedly ineffective performance.” Worthington v. State, 652 So.2d 790, 796 (Ala.Crim.App.l994)(internal citations omitted). The defendant must demonstrate deficient performance and prejudice to prevail on an ineffective-assistance-of-counsel claim, or it cannot be said that the conviction “resulted from a breakdown in the adversary process that renders the result unreliable.” Strickland 466 U.S. at 687.
In the instant case, there is no reason to determine whether Surratt’s trial counsel was deficient in failing to object when portions of A.M.’s statement from a DHR hearing were read into evidence because, even if counsel’s performance was deficient, Surratt cannot show that the substance of that statement was so prejudicial to his defense that admission of that evidence compromised the fairness of his trial.[1] The courts of this State have long held that the testimony of the victim of a sexual offense is sufficient to establish a prima facie case of sexual abuse. See, e.g., Shouldis v. State, 953 So.2d 1275, 1285 (Ala.Crim.App.2006) (“The victim’s testimony alone is sufficient to establish a pri-ma facie case of either rape or sexual abuse.”). J.H. testified that Surratt attempted to have sex with her in March, but stopped when he started to hurt J.H. and that Surratt had “punishment sex” with her on another occasion in April— both sex acts occurring before J.H.’s 16th birthday.
A.M.’s statement that Surratt “raped” J.H. in March was merely cumulative of J.H.’s testimony at trial, and this therefore limits any prejudicial effect the statement may have had on the jury. This Court has long held that the erroneous admission of evidence that is merely cumulative is harmless error. Dawson v. State, 675 So.2d 897, 900 (Ala.Crim.App.1995), affd, 675 So.2d 905 (Ala.1996). Moreover, “[tjestimony which may be apparently illegal upon admission may be rendered prej-udicially innocuous by subsequent or prior lawful testimony to the same effect or from which the same facts can be inferred.” Thompson v. State, 527 So.2d 777, 780 (Ala.Crim.App.1988). Because J.H.’s prior testimony was to the same effect as A.M.’s testimony, and because the jury could infer the same facts from J.H.’s testimony and A.M.’s testimony, the reading of the statement made by A.M. at the DHR hearing was rendered prejudicially innocuous. When the innocuous nature of A.M.’s statement is coupled with the other evidence presented by the State that strongly indicated Surratt’s guilt, it cannot be said that the outcome of the trial would probably have been different absent the *841 reading into evidence of A.M.’s statement made at the DHR hearing. Accordingly, Surratt has not established the second prong of the Strickland test and is not entitled to relief on this claim.
II.
Surratt next contends that the circuit court erred when it denied his motion for a judgment of acquittal on the ground that there was insufficient evidence to support his conviction for rape in the second degree. Specifically, Surratt argues that the State failed to present sufficient evidence to prove that J.H. was less than 16 years old at the time of their sexual relationship.
“ ‘ “In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.” ’ Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), affd, 471 So.2d 493 (Ala.1985). ‘ “The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.” ’ Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). ‘ “When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.”’ Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). ‘The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ Ex parte Bankston, 358 So.2d 1040,1042 (Ala.1978).
“ ‘The trial court’s denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, this court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983). When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal does not constitute error. McConnell v. State, 429 So.2d 662 (Ala.Cr.App.1983).’ ”
Gavin v. State, 891 So.2d 907, 974 (Ala.Crim.App.2003), cert, denied, 891 So.2d 998 (Ala.2004) (quoting Ward v. State, 610 So.2d 1190,1191 (Ala.Crim.App.1992)).
Pursuant to § 13A-6-62(a)(l), Ala.Code 1975, a person commits the offense of rape in the second degree if:
“Being 16 years old or older, he or she engages in sexual intercourse with a member of the opposite sex less than 16 and more than 12 years old; provided, however, the actor is at least two years older than the member of the opposite sex.”
Section 13A-6-60, Ala.Code 1975, defines “sexual intercourse” as follows: “[s]uch term has its ordinary meaning and occurs upon any penetration, however slight; emission is not required.”
*842 Despite Surratt’s contention to the contrary, the record indicates that the State presented sufficient evidence showing that J.H. was under 16 years old when she and Surratt had sex. J.H.’s description of her initial encounter with Surratt was as follows:
“[J.H.]: We made a pallet on the floor and I took my clothes off and he tried to stick his penis in me, but it didn’t work. I told him that he was hurting me and to stop, and he stopped.
“[Prosecutor]: It — it hurt you?
“[J.H.]: Yes, ma’am.
“[Prosecutor]: But he did actually attempt to penetrate you?
“[J.H.]: Yes, ma’am.”
(R. 243.) J.H. further testified that she was forced to have “punishment sex” with Surratt because she failed to do her duties with the “organization.” J.H. testified that she was under 16 years of age at the time of both sexual encounters with Surratt. These statements were sufficient to prove a prima facie case of second-degree rape. See Shouldis, 953 So.2d at 1285.
Although Surratt did present conflicting evidence by arguing that his sexual relationship with J.H. was consensual and that it did not begin until J.H.’s 16th birthday, this conflicting evidence presented “a jury question which is not subject to review on appeal.” Barnes v. State, 571 So.2d 372, 374 (Ala.Crim.App.1990) (citing Willis v. State, 447 So.2d 199, 201 (Ala.Crim.App.1983)). “ ‘The weight of the evidence, and the credibility of the witnesses, and inferences to be drawn from the evidence, where susceptible of more than one rational conclusion, are for the jury alone.’” Turrentine v. State, 574 So.2d 1006, 1009 (Ala.Crim.App.1990) (quoting Walker v. State, 416 So.2d 1083, 1089 (Ala.Crim.App.1982)). Although conflicts in the evidence existed, the State’s evidence, when considered as a whole, could have permitted the jury to reasonably conclude that Surratt had sex with J.H. before J.H.’s 16th birthday. The jury weighed the evidence and found Surratt guilty. It is not this Court’s responsibility to reweigh the evidence. Accordingly, no basis for reversal exists regarding this issue.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
WINDOM, P.J., concurs.
JOINER, J., concurs in the rationale in part and concurs in the result, with opinion, which BURKE, J., joins.
WELCH, J., concurs in part II and dissents from part I.

. As this Court recognized in Smith v. State, 122 So.3d 224 (Ala.Crim.App.2011):
" ‘[TJhere is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not detennine whether counsel’s performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel’s performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.’ ” 122 So.3d at 224 (quoting Strickland v. Washington, 466 U.S. 668, 697 (1984) (emphasis added)).